*416 RHESA HAWKINS BARKSDALE, Circuit Judge,
joined by
E. GRADY JOLLY and CARL E. STEWART, Circuit Judges, dissenting:
Regarding express preemption, while the result reached by the well-written majority opinion may reflect what the ICCTA should say, the majority fails to enforce what the ICCTA does say. The ICCTA expressly grants the Surface Transportation Board (STB) exclusive jurisdiction over “transportation by rail carriers”; and, such “transportation” includes rail crossings. Understandably, this statutorily-mandated result may be inconvenient, or burden the STB, or even be an undesirable policy choice. That, of course, does not authorize our altering the statute’s vesting exclusive jurisdiction in the STB. Accordingly, I must respectfully dissent.
Primarily at issue is whether Congress, through the ICCTA, expressly preempted laws such as Louisiana Code of Civil Procedure Article 3655. This analysis, of course, focuses on the language of the preemption clause. CSX Transp., Inc. v. Easterwood, 507 U.S. 658, 664, 113 S.Ct. 1732, 123 L.Ed.2d 387 (1993). Regarding the STB’s exclusive jurisdiction and concomitant preemption, the ICCTA provides:
The jurisdiction of the [Surface Transportation] Board over—
(1) transportation by rail carriers, and the remedies provided in this part with respect to rates, classifications, rules (including car service, interchange, and other operating rules), practices, routes, services, and facilities of such carriers; and
(2) the construction, acquisition, operation, abandonment, or discontinuance of spur, industrial, team, switching, or side tracks, or facilities, even if the tracks are located, or intended to be located, entirely in one State, is exclusive. Except as otherwise provided in this part, the remedies provided under this part with respect to regulation of rail transportation are exclusive and preempt the remedies provided under Federal or State law.
49 U.S.C. § 10501(b) (emphasis added).
Pursuant to this section, the STB has “exclusive” jurisdiction over “transportation by rail carriers”, which, as discussed infra, includes the rail crossings at issue. This is one of the “remedies” provided by this section for the “regulation of rail transportation”, addressed in the above preemption provision. Pursuant to the above section, that remedy is “exclusive and prempt[s] the remedies provided under Federal or State law”, including the Louisiana possessory action at issue.
This is the plain meaning of the section. Our court applies the plain meaning of a statute unless doing so would lead to an absurd result. E.g., Tesfamichael v. Gonzales, 411 F.3d 169, 173 (5th Cir.2005). Vesting exclusive jurisdiction in the STB over railroad crossings does not lead to such a result. Obviously, for matters of this type, resolution should initially be through the STB, not the courts. Judicial review is available. 28 U.S.C. § 2321 (judicial review of STB orders). Moreover, as discussed infra, other sources, including the STB’s interpretation of this section, should not be allowed to alter this plain meaning.
The majority takes an approach at odds with this plain meaning. Under the majority’s analysis, the questions are: does a rail crossing constitute “transportation by rail carriers”; and, does a state judicial remedy that affects operation of a crossing constitute “regulation of rail transportation”? (Even under this approach, there should be express preemption.)
In the light of the ICCTA’s broad definition of “transportation”, the district *417 court concluded correctly that a railroad crossing constitutes “transportation by rail carriers”. The ICCTA defines “transportation” to include, inter alia, “a locomotive, car, vehicle, ... property, facility, instrumentality, or equipment of any kind related to the movement of passengers or property, or both, by rail, regardless of ownership or an agreement concerning use”. 49 U.S.C. § 10102(9)(A) (emphasis added). That a rail crossing falls within this definition is inescapable.
The majority rejects this obvious conclusion but does not explain how a railroad crossing is not “equipment of any kind related to the movement of passengers or property, or both, by rail”, other than by citation to Island Park, LLC v. CSX Transp., Inc., 559 F.3d 96 (2d Cir.2009). See Maj. Op. at 409. Yet the Second Circuit admitted (in the very quotation relied upon by the majority): “Rail transportation does include ‘property ... related to the movement of passengers or property ... by rail,’ 49 U.S.C. § 10102(9)(A), and a rail crossing does constitute an improvement to railroad tracks that allows vehicles, equipment, and persons to traverse the tracks”. 559 F.3d at 103 (internal quotation omitted); Maj. Op. at 409.
Although the Second Circuit implicitly recognized that, under the statute’s plain language, a rail crossing does constitute “transportation by rail carriers”, it nonetheless held “the term rail ‘transportation’ does not encompass ... this private rail crossing”. Id. at 103. The Second Circuit reached this conclusion by conflating the question raised by the first sentence of 49 U.S.C. § 10501(b) (what is transportation) with that raised by its second sentence (what is regulation of rail transportation), but then added a factor not found in the section: “what does the state seek to regulate and does the proposed regulation burden rail transportation”? Id.
The majority follows suit and, while keeping the two inquiries separate, asks whether the state law at issue substantially interferes with railroad operations. Maj. Op. at 413. Some might posit that, from a policy perspective, this is desirable. This “substantial interference” approach, however, has no basis in the language of the ICCTA.
Our court’s binding precedent in Friberg v. Kansas City Southern Railway Co., 267 F.3d 439 (5th Cir.2001), is instructive. Friberg addressed whether the ICCTA expressly preempted the Texas Anti-Blocking Statute, Tex. Transp. Code. Ann. § 741.007(a). That statute limited, inter alia, the length of time a train could occupy a railroad crossing. Friberg noted: “Regulating the time a train can occupy a rail crossing impacts, in such areas as train speed, length and scheduling, the way a railroad operates its trains .... ” Id. at 443. Accordingly, our court held the ICCTA expressly preempted Texas’ attempt to regulate a railroad’s use of railroad crossings. Id. at 444.
The majority attempts to distinguish Friberg by stating: “These same concerns are not present in Franks’s state law property action”. Maj. Op. at 411. No further explanation is given, however. On the other hand, the district court found such concerns present when it found regulation of the ownership and use of railroad crossings affects safety, drainage, and maintenance, which necessarily affect “rail transportation”.
In the absence of preemption, a remedy under Louisiana Code of Civil Procedure Article 3655 could both compel the reinstallation of the destroyed crossings and enjoin the closing of others. In short, this is “regulation of rail transportation”, over which the STB has exclusive jurisdiction.
*418 As stated, to circumvent this conclusion, the majority holds the ICCTA preempts state regulation of crossings only if such regulation constitutes a “[substantial interference with railroad operations”. Maj. Op. at 413. Again, this approach cannot be justified under the ICCTA’s plain language; nor should our court look past that language to other sources, including the STB’s flawed analysis.
Finally, because the ICCTA expressly preempts Franks’ state-law action, I do not reach implied preemption vel non, except to agree with the majority, of course, that the district court’s findings about how crossings affect “rail transportation” related to all railroad crossings, not just to those at issue in this action.
I respectfully dissent.